IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MARMC TRANSPORTATION, INC., | ) | Case No. 10-20653 |
| | ) | Chapter 11 |
| Debtor. | ) | |

FILED
10:48 am, 12/19/11
Tim J. Ellis
Clerk of Court

## MEMORANDUM OPINION ON OBJECTION TO PROOFS OF CLAIM OF FREMONT AVIATION

On September 21, 2011, this matter came before the court for an evidentiary hearing on the Objection to Proofs of Claim of Fremont Aviation (nos. 14 and 41) filed by MarMc Transportation, Inc. ("MarMc") and the Response filed by Fremont Aviation LLC ("Fremont Aviation"). The Debtor was represented by Stephen Winship. Fremont Aviation was represented by Drew Perkins. The court having considered the testimony, evidence, the arguments of the parties, and applicable law, is prepared to rule.

**Facts**

MarMc filed for Chapter 11 bankruptcy protection on June 3, 2010. Fremont Aviation filed two unsecured claims: (1) Claim no. 14 in the amount of $54,981.20; and, (2) Claim no 41 in the amount of $131,874.07. MarMc objects to the claims alleging that it is not responsible for the claims, as Mark Richardson personally incurred the debt, not on behalf of MarMc.

Mr. Eli Bebout ("Bebout") testified that Fremont Aviation was organized as a limited liability company with R&N Investment, LLC ("R&N") and Mark A. Richardson

("Richardson") as its members and co-managers. Each member received a fifty percent (50%) interest in the limited liability company. The Operating Agreement, signed by both members, lists the initial capital contributions as:

| Name and Address | Initial Capital Contribution |
|---|---|
| Mark A. Richardson<br>6850 W. Yellowstone Highway<br>Casper, WY 82604 | $500,000.00 |
| R&N Investment, LLC<br>4424 Skyline Drive<br>Riverton, WY 82501 | $500,000.00 |

Mr. Bebout testified that the members deviated from the Operating Agreement. The actual contributions were: a 1981 King Air 200 aircraft ("Aircraft") from Richardson and R&N contributed a hanger and cash in the amount of $350,000.00. The deviations were discussed and memorialized in the minutes for the annual meeting for Fremont Aviation. At the time that Fremont Aviation was organized, it was Bebout's understanding that Richardson owned the Aircraft, "outright," free and clear of liens.

Initially, the members, Richardson and R&N were to split the costs and expenses equally, or fifty/fifty. The costs were divided into two categories: fixed and variable. Fixed costs included, but were not limited to: hanger costs, insurance and heat. Variable costs included items such as fuel, payroll expenses and airplane maintenance. Mr. Bebout testified that in 2009, by oral agreement, the members modified the ratio so that Richardson was paying 75% of the fixed expenses, as Richardson was using the aircraft

for a greater percentage of time. The proportional share was determined by a review of the monthly flight logs to determine the airplane's usage and by whom.

Additionally the Operating Agreement provided, in part,

> "Manager shall have full power and authority...to manage, maintain and operate the Aircraft on behalf of the Company under the provisions of the U.S. Federal Aviation Regulations Par[t]. 91, including without limitation, Federal Aviation Regulation Part 91, Section 91.501..."[1]

> "Manager shall mean one or more managers. Specifically, 'Manager' shall mean Eli D. Bebout and Mark A. Richardson or any other persons or entity that succeed such Manager..."[2]

Mr. Bebout testified that this section of the Operating Agreement refers to the ownership of the limited liability company and the utilization of the aircraft. It provides that Mr. Richardson can own the airplane and MarMc could utilize the airplane without violating part 91 of the FAA rules and regulations. Part 91 would not allow Fremont to operate the aircraft for lease for hire. However, the owners and the owners' entities are allowed to use the aircraft.

Mr. Bebout testified that it was his understanding that the aircraft was used by MarMc for work purposes to fly crews to work sites, including work with Monster.[3] Mr. Richardson represented to him that MarMc was to be billed.

---

[1] Exhibit 2, Page 15.

[2] *Id.* at page 3

[3] The reference to "Monster" is to Monster Heavy Haulers, LLC.

Page 3

**Discussion**

MarMc alleges that the claims are not allowable claims of its bankruptcy estate, but the personal debt of Mark Richardson ("Richardson"). Fremont Aviation argues that the claims are allowable as Richardson, MarMc's president and one-half shareholder, either with apparent or implied authority, authorized the use of the Aircraft for MarMc, the bills were sent to MarMc and paid by MaMc.

A properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim.[4] Such a claim is deemed allowed unless a party in interest objects.[5] The objecting party has the burden of going forwarded with evidence supporting the objection. Such evidence must be of a probative force equal to that of the allegations contained in the proof of claim. However, an objection raising only legal issues is sufficient. Once the objecting party has reached this threshold, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim.[6] The validity of a creditor's claim is determined by rules of state law. The bankruptcy court is required to determine validity or invalidity of the contract by looking to the law of the state which the court found that the contract was made and primarily payable.[7]

<u>Are the claims valid?</u>

MarMc argues that the Fremont Aviation claims should be disallowed as the

---

[4] Fed. R. Bankr. P. 3001(f).

[5] 11 U.S.C. § 502(a).

[6] *In re Geneva Steel Co.* 260 B.R. 517 (10th Cir. BAP 2001) *In re Harrison*, 987 F.2d 677 (10th Cir. 1993).

[7] *Grogen v. Gardner*, 498 U.S. 279 (1991).

organization of Fremont Aviation was with Richardson, individually; the debts were incurred by Richardson, individually and not in behalf of MarMc; and Richardson did not have authority to incur these debts on behalf of MarMc.

Ms. Cindy Richardson, vice president and co-owner of MarMc testified that she was not aware of any resolution that authorized MarMc to pay for any expenses of the aircraft. She was aware that Mr. Richardson used the airplane, as their children were included in some trips. She also testified that she is not aware of the working relationship between MarMc and Monster.

The Wyoming Supreme Court held that if the officers of a corporation exceed their authority and the act is one that could have been authorized in the first instance by the board of directors, the act may be expressly or impliedly ratified and thus be rendered just as binding as if it had been authorized when done.[8]

> "Implied ratification of a previously unauthorized act may result from (1) Accepting and retaining the benefits of the act, (2) silence, acquiescence, or failure to repudiate, or (3) other affirmative acts showing an adoption of the act or contract. Ratification require full knowledge of all the material facts on the part of the corporate principal. Although actual knowledge of the act is required, directors are held to know that which they could have ascertained with slight diligence. A director is chargeable with knowledge of those corporate affairs which it is his duty to know. Whether or not ratification exists is a question of fact where more than one inference can be drawn from the evidence."[9]

It is uncontested that Mr. Richardson did not have express authority to incur debt

---

[8] *Lahnston v. Second Chance Ranch Co.*, 969 P.2d 32 (Wyo. 1998).

[9] *Id* at 36.

Page 5

for the use of aircraft. However, he was operating MarMc during the time that the debt was incurred. Mr. Bebout testified that he was lead to believe, at first, that Mr. Richardson was the sole owner of MarMc; that the aircraft usage was attributed to MarMc on the flight logs; that the invoices were sent to MarMc and payments were received from MarMc prior to 2009 for the fixed and variable expenses.

The court finds that Richardson's acts of incurring debt on behalf of MarMc are acts that could have been authorized in the first instance by the board of directors. Incurring debt, during the day-to-day operations of a corporation is common place and could have been authorized by the board. MarMc accepted and retained the benefits of the usage of the aircraft. The court's review of the flight logs reflects that the aircraft was used by MarMc over the course of three years. Additionally, MarMc was billed; and, paid the invoices from MarMc's bank accounts for the 2007 and 2008 expenses. None of the payments received for invoices billed to MarMc were paid by a check from Mark Richardson, individually.

During this time, neither MarMc's management or board of directors questioned or repudiated the expenses. The management, Richardson, was incurring the debt and the board of directors was silent. Therefore, the court finds that MarMc impliedly ratified the transaction and the claims are valid.

Are the claims' amounts valid?

Fremont filed two proofs of claim: (1) Claim No. 14 in the amount of $59,981.20, filed on June 23, 2010; and, (2) Claim No. 41 in the amount of $131,874.07, filed on

October 12, 2010.

Claim No. 14. The claim amount is summarized as the hours of rental of the aircraft for the months of February 2009 through June 2009 for the total amount of $59,981.20. Mr. Bebout testified that each month directly corresponds to the pilot's log which reflects the usage and by whom. The court finds that the testimony is credible and the creditor has met the burden of amount of Claim No. 14.

Claim No. 41. The claim is itemized to include the following:

- ½ of Atlantic Aviation Invoices paid by Fremont Aviation .... $11,021.08
- ½ of Trajen Flight Services Invoices paid by Fremont Aviation ................................. $12,101.77
- 58% of 10 months of 2007 Hanger rent paid by Fremont Aviation ................................. $10,150.00
- 74% of 12 months of 2008 hanger rent paid by Fremont Aviation ............................. $15,540.00
- 50% of 12 months of 2009 hanger rent paid by Fremont Aviation ............................. $10,500.00
- ½ of Repair to King Air paid by Fremont Aviation .......... $49,580.32
- Unpaid Invoices owed by Fremont Aviation by Marmc .... <$59,981.20>
  [This amount was deducted as it constitutes Claim No. 14.]
- Credit owed Fremont Aviation by Marmc for Steve Shafer's salary paid by Nucor, Inc. Ck #10184. ....... $20,743.00

Mr. Bebout testified that Fremont Aviation did not have the funds to pay its debts, so Nucor, one of his entities, paid the pilot's, (Steve Shafer) salary. The claim for invoices for Atlantic Aviation and Trajen were for one-half of the total bills for required inspections, checking propellers and routine maintenance for the aircraft. Mr. Bebout testified that pursuant to the oral agreement between the members, MarMc was to pay a great share of the fixed costs. However, in 2009, Mr. Bebout adjusted that downward as

MarMc has ceased using the plane, stopped paying the bills and "the plane sat parked." Based upon the testimony, the court finds that the creditor carried his burden that the claim amounts are valid and allowable.

The court having determined that Fremont has carried its burden as to the validity and amount of Claim No. 14 and Claim No. 41, allows the claims.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 19 day of December, 2011.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

cc:
Stephen Winship
Drew Perkins