IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED

3:01 pm, 1/30/12
Tim J. Ellis
Clerk of Court

In re                                              )
                                                   )
MARMC TRANSPORTATION, INC.,     )     Case No.  10-20653
                                                   )     Chapter 11
Debtor.                     )

## MEMORANDUM OPINION ON AMENDED OBJECTION TO PROOFS OF CLAIMOF COMMERCE BANK & TRUST

On September 21, 2011 this matter came before the court for an evidentiary

hearing on the Debtor's Amended Objection to Proofs of Claim filed on behalf of

Commerce Bank & Trust ("Commerce Bank"). The parties were represented as stated on

the record. The parties each submitted memoranda of law and stipulated exhibits

requesting that the court consider the matter without the benefit of testimony as the facts

were uncontested and could be determined as a matter of law. The court having

reviewed the record, the arguments of the parties, and the applicable law, is prepared to

rule.

**Jurisdiction**

The court has jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B)[1] and Fed. R.

Bankr. P. 3007.

**Findings of fact**

Commerce Bank filed two claims: (1) Claim No. 16 in the amount of

---

[1] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.

$1,037,025.44 and (2) Claim No. 43, in the amount of "$557,755.41 + interest + fees," or as stated on the Summary in Support of Proof of Claim, the amount of $706,786.84.

On June 15, 2006, Mark A. Richardson ("Richardson") borrowed $1,035,975.00 from Commerce Bank granting the lender a security interest in the 1981 Beechcraft King Air 200 ("Aircraft") by the Aircraft Security Agreement dated June 15, 2006 and the UCC Financing Statement filed June 19, 2006 with the State of Wyoming Secretary of State. Additionally, on June 14, 2006, Richardson, as President of MarMc, executed a Corporate Resolution to Grant Collateral/Guarantee, authorizing MarMc as guarantor on the loan.

In February 2007, Richardson conveyed the Aircraft to Fremont Aviation LLC ("Fremont") as his initial contribution for the organization of that limited liability company. The other member of Fremont Aviation was R & N Investment, LLC ("R & N).[2]

Commerce Bank sent Richardson and MarMc a "Notice of Acceleration and Default" on August 5, 2009. Subsequently, Commerce Bank initiated a civil action in the State of Wyoming Ninth Judicial District Court by filing a complaint, naming Richardson, Fremont and MarMc as defendants, alleging breach of contract and a motion for a prejudgment writ of replevin. Fremont Aviation filed its response and counter

---

[2] The court is aware of the facts of the organization of Fremont Aviation, LLC as MarMc objected to the claim filed by Fremont Aviation, the court held a hearing, and entered its order. The matter is currently under appeal to the Tenth Circuit Bankruptcy Appellate Panel. MarMc's counsel referenced the matter and facts in his oral argument to the court for this matter.

claim, alleging that Commerce Bank was unjustly enriched as Fremont Aviation had
upgraded and maintained the Aircraft. Additionally, R & N filed a complaint against
Fremont Aviation and Commerce Bank for the enforcement of its storage lien in the
amount of $90,000.00.

On June 3, 2010, MarMc filed its chapter 11 bankruptcy petition which invoked
the automatic stay. MarMc was dismissed from the state court action. Subsequently, the
state court granted Commerce Bank's motion and entered an Order Granting Plaintiff's
Motion for Prejudgment Writ of Replevin ("Writ") on August 24, 2010. The court's
review of the terms of the Writ indicate that the parties stipulated, in part, that Commerce
Bank was entitled to immediate possession, and R & N had the right of first refusal to
purchase the aircraft. As part of the stipulated exhibits, Fremont Aviation, by its
Manager, Eli Bebout transferred the Aircraft to Commerce Bank with an undated
Aircraft Bill of Sale.

On October 20, 2010, Commerce Bank, Fremont Aviation and R & N entered into
a Mutual Settlement and Release of Claims. Commerce Bank agreed to: (1) pay R & N
the amount of $10,000.00 to satisfy the storage lien; (2) assign to R & N "one half (½) of
any claim it has against MarMc;" (3) "pursue, at its discretion...the claim
against...Richardson;" and, (4) file a claim in the MarMc bankruptcy for the guaranty.
Fremont Aviation and R & N agreed to be responsible for any and all other outstanding
liens or encumbrances of the Aircraft. On October 21, 2011, Nucor, Inc. ("Nucor") and
Commerce Bank entered into a Purchase Agreement, whereas Nucor purchased the

Page 3

Aircraft from Commerce Bank. The terms of the Purchase Agreement state, in part:

> "Purchaser shall pay Seller Four Hundred Thousand U.S. Dollars
> ($400,000.00) as the purchase price for said aircraft. Said aircraft is
> presently located in Riverton, WY and title to the plane shall be conveyed
> by a standard FAA Bill of sale. This sale shall close by 4:00 p.m. MDT
> October 15, 2010."

Nucor submitted a check to Commerce Bank, dated October 21, 2010 for the amount of

$400,000.00.[3] According to the statements of the parties, Commerce Bank received the

check on or about October 27, 2010.

On January 21, 2011, counsel for Commerce Bank provided the "Notification of

Disposition of Collateral ("Notice of Disposition") to counsel for MarMc. Thereafter,

Commerce Bank transferred title of the Aircraft to Nucor by an Aircraft Bill of Sale on

May 23, 2011.

## Discussion

Counsel for Commerce Bank, stated on the record that Claim No. 43 amends

Claim 16 and represents the deficiency balance from the sale of the Aircraft. Therefore,

the court will consider Claim No. 16, as amended by Claim No. 43. Additionally,

counsel for MarMc stated that it is not pursuing its objection to the claims based upon

ultra vires.

MarMc objects to Commerce Bank's proof of claim on the following grounds: (1)

Commerce Bank failed to comply with the Uniform Commercial Code ("UCC")

---

[3] Nucor, Inc. and R & N are entities in which Eli Bebout owns an interest. R & N is a member of Fremont
Aviation.

requirements including (a) the timeliness; (b) contents of the notice; and (c) whether the

amount obtained by the disposition was commercially reasonable; (2) Commerce Bank

violated the automatic stay in bringing the deficiency against MarMc; and, (3) Commerce

Bank did not comply with Fed. R. Bankr. P. 2016, which requires the secured lender to

obtain court approval of attorney fees if the fees are included in a claim.

A properly filed proof of claim constitutes prima facie evidence of the validity and

amount of the claim.[4]  Such a claim is deemed allowed unless a party in interest objects.[5]

The objecting party has the burden of going forwarded with evidence supporting the

objection.  Such evidence must be of a probative force equal to that of the allegations

contained in the proof of claim.  However, an objection raising only legal issues is

sufficient.  Once the objecting party has reached this threshold, the creditor has the

ultimate burden of persuasion as to the validity and amount of the claim.[6]  The validity of

a creditor's claim is determined by rules of state law. The bankruptcy court is required to

determine validity or invalidity of the contract by looking to the law of the state which

the court found that the contract was made and primarily payable.

(1)    Requirements for disposition of collateral under Wyoming law

MarMc argues that the deficiency claims are barred by the Uniform Commercial

---

[4] Fed. R. Bankr. P. 3001(f).

[5] 11 U.S.C. § 502(a).

[6] *In re Geneva Steel Co.* 260 B.R. 517 (10th Cir. BAP 2001) and, *In re Harrison,* 987 F.2d 677 (10th Cir. 1993).

Code ("UCC").  However, MarMc relies upon cases that were determined prior to the

revisions of the Wyoming UCC in 2001.  The "absolute bar rule" is no longer applicable.

The revised 2001 Article 9 adopts the rebuttable presumption rule for business

transactions recognizing that reduction or denial of a deficiency is an appropriate

remedy.[7]

Under the Wyoming UCC, in an action in which the deficiency is in issue, the

UCC states:

"(a)  In an action arising from a transaction, other than a consumer
transaction, in which the amount of a deficiency...is an issue, the following
rules apply:
(i)  A secured party need not prove compliance with the provisions
of this part relating to collection, enforcement, disposition or acceptance
unless the debtor or a secondary obligor places the secured party's
compliance in issue;
(ii) If the secured party's compliance is placed in issue, the secured
party has the burden of establishing that the collection, enforcement,
disposition or acceptance was conducted in accordance with this part:
(iii)...if a secured party fails to prove that the collection,
enforcement, disposition or acceptance was conducted in accordance with
the provision of this part relating to collection, enforcement, disposition or
acceptance, the liability of a debtor or a secondary obligor for the
deficiency is limited to an amount by which the sum of the secured
obligation, expenses and attorney's fees exceeds the greater of:
(A) The proceeds of the collection, enforcement, disposition
or acceptance; or,
(B) The amount of proceeds that would have been realized
had the noncomplying secured party proceeded in accordance
with the provisions of this part relating to collection,
enforcement, disposition or acceptance.
(iv)   For the purposes of subparagraph (a)(iii)(B), the amount of
proceeds that would have been realized is equal to the sum of the secured

---

[7] 4 James J. White and Robert S. Summers, *Uniform Commercial Code*, 503 (6th Ed. 2010), (discussing the adoption of the 1999 Uniform Commercial Code, identical to Wyoming UCC.).

obligation, expenses and attorney's fees unless the secured party proves that the amount is less than that sum..."[8]

First, the court must determine if this is a "transaction, other than a consumer transaction." Under the UCC a consumer-goods transaction means, "a consumer transaction in which: (A) An individual incurs an obligation primarily for personal, family or household purposes; and, (B) A security interest in consumer goods secures the obligation."[9] "Consumer goods means goods that are used or bought for use primarily for personal, family or household purposes."[10] The court finds that the transaction between Commerce Bank and Richardson, to which MarMc was the guarantor, was not a consumer-goods transaction as there was not evidence or stipulated facts presented that the purchase of the Aircraft was for the primary use for personal, family or household purposes. Therefore, this section of the UCC is applicable to the disposition of the collateral.

Secondly, as MarMc placed Commerce Bank's compliance with the provisions of part 6, relating to collection, enforcement, disposition or acceptance at issue, the court must next determine if Commerce Bank complied with the requirements under: (a) § 9-611 (notice); (b) § 9-612 (timeliness); (c) § 9-613( contents); and, (d) § 9-627 (whether the conduct was commercially reasonable).

---

[8] Wyo. Stat. §34.1-9-626 (2011). Unless otherwise indicated, all future references to the Wyoming Uniform Commercial Code shall be referred to as § 9-xxx.

[9] Wyo. Stat §34.1-9-102 (a) (xxiv) (2011).

[10] Wyo. Stat §34.1-9-102 (a) (xxiii) (2011).

(a)    Notice

The UCC requires a secured party wanting to dispose of collateral, to send a

"reasonable authenticated notification of disposition" to specific interested parties. The

notification must be reasonable in the manner that it is sent, the timeliness (i.e, a

reasonable time before the disposition is to take place), and its contents.[11]  The persons to

receive notice, include, in part: "(i) the debtor; and  (ii) any secondary obligor..."[12]

MarMc, the secondary obligor, was provided the "Notification of Disposition of

Collateral" on January 21, 2011.

(b)    Timeliness

The UCC further states that "...whether a notification is sent within a reasonable

time is a question of fact."[13]  "This generally means that the notification must be sent at a

reasonable time in advance of the date of a public disposition or the date after which a

private disposition is to be made."[14]  The court reviewed the time-line regarding

Commerce Bank's completion of the sale of the Aircraft to Nucor and the notice

provided to MarMc. The specific terms of the Purchase Agreement between Commerce

Bank and Nucor required Nucor to pay Commerce Bank "Four Hundred Thousand

Dollars." This was completed by the check that was mailed to and received by

---

[11] Wyo. Stat. 34.1-9-611 (2011) Official Comments.

[12] Wyo. Stat. §34.1-9-611(c) (2011).

[13] Wyo. Stat. 34.1-9-612 (2011).

[14] Id., Official Comment.

Page 8

Commerce Bank on or about October 27, 2010. It appears to the court that at that time,

Nucor had possession of the Aircraft as it was "located in Riverton, WY." The

remaining requirement to complete the sale was that the "title to the plane shall be

conveyed by a standard FAA Bill of sale." This requirement was completed on May 23,

2011. However, the Notice of Disposition states that the transaction was to "occur no

later than January 31, 2011." This gave MarMc only seven days notice of the pending

disposition. Considering the amount of deficiency, this court does not consider that

seven days notice is a reasonable time before the date after which a private disposition is

to be made, or that the private sale to Nucor was to be completed.

    (c)    <u>Contents of the notice.</u>

The contents and form of the notification are considered sufficient if the

notification:

> "(A)    Describes the debtor and the secured party;
> (B)    Describes the collateral that is subject of the intended disposition;
> (C)    States the method of intended disposition;
> (D)    States that the debtor is entitled to an accounting of the unpaid
>       indebtedness and states the charge, if any, for an accounting, and;
> (E)    States the time and place of a public disposition or the time after
>       which any other disposition is to be made."[15]

Additionally, the UCC states, "A notification that lacks some of the information may be

sufficient if found to be reasonable by the trier of fact.[16]

The court's review of the Notice of Disposition reflects that the notice sufficiently

---

[15] Wyo. Stat. 34.1-9-614 (2011).

[16] *Id.* Official Comments.

describes: (1) "the debtor and secured party" on the second page, stating: MarMc executed and delivered to Plaintiff a Commercial Guaranty, which unconditionally guaranteed Defendant Richardson's payment and performance under the terms and obligations of the Note;" (2) the collateral as it is described in detail on pages one and two of the Notice; and, (3) states that MarMc is entitled to an accounting. The two requirements that the court finds insufficient include: (1) the Notice of Disposition describing the method of intended disposition; and (2) the time and place that the sale was to occur. A review of the Purchase Agreement and stipulated exhibits reflects that the funds had already been transferred from Nucor to Commerce Bank, contrary to the wording in the Notice of Disposition. Additionally, as stated, the Notice of Disposition only provided seven days notice to MarMc of the pending disposition.

Commerce Bank did not transfer the title of the Aircraft by an FAA bill of sale until four months later. It argues that MarMc did nothing after receiving the Notice of Disposition. However, MarMc could not have known the bill of sale was not transferred immediately after the January 31, 2011 transaction date as stated on the Notification of Disposition. Commerce Bank did not amend or revise its notice to provide MarMc notice of the extended time to respond. The court finds that the information in the Notice of Disposition is misleading and therefore, insufficient and unreasonable.

(d)     Whether the conduct was commercially reasonable.

For the court to determine whether the secured creditor's conduct was commercially reasonable, the UCC states:

Page 10

(a)    "The fact that a greater amount could have been obtained by a..disposition...is not of itself sufficient to preclude the secured party from establishing that the ...disposition was made in a commercially reasonable manner...

(b)    A disposition of collateral is made in a commercially reasonable manner if the disposition is made:

    (i)    In the usual manner on any recognized market;

    (ii)   At the price current in any recognized market at the time of the disposition; or

    (iii)  Otherwise in conformity with reasonable commercial practices amount dealers int the type of property that was the subject of the disposition."

(c)    A collection, enforcement, disposition or acceptance is commercially reasonable if it has been approved:

    (i)    In a judicial proceeding;

    (ii)   By a bona fide creditors' committee;

    (iii)  By a representative of creditors; or

    (iv)   By an assignee for the benefit of creditors.

(d)    Approval under subsection (c) need bot be obtained and lack of approval does not mean that the ...disposition...is not commercially reasonable.[17]

The parties stipulated that the court consider this matter as a matter of law, based upon the stipulated facts and exhibits.  Commerce Bank's counsel argued that the Aircraft: sold for more than it was valued; the economy was bad; the Aircraft was sold for an amount more that it was appraised; and, Commerce Bank "got top dollar on it."  However, Commerce Bank did not provide any evidence by way of exhibits or testimony that the private sale conducted between itself and Nucor was in the usual manner on any recognized market; that the price was current in any recognized market at the time of disposition, or that the sale was in conformity with the reasonable commercial practices

---

[17]    Wyo. Stat §34.1-9-626 (2011).

amoung dealers of aircraft. As Commerce Bank failed to provide the court with any

evidence, it failed to prove that its conduct was commercially reasonable.

Commerce Bank failed to prove that the disposition of the Aircraft was conducted

in accordance with the requirements of Part 6. The consequence to Commerce Bank of

its failure to prove compliance brings the rebuttable presumption of § 9-626(a)(iv) before

the court, i.e. "the amount of proceeds that would have been realized is equal to the sum

of the secured obligation, expenses and attorney's fees unless the secured party proves

that the amount is less than that sum."[18] In other words, if a secured creditor proves that

a complying sale or other disposition would have brought an amount less than the

amount due from the debtor, the secured creditor rebuts the presumption and earns a right

to a deficiency judgment measured by the amount that would have been recovered.

The court's review of current case law indicates there is not any controlling law in

the Tenth Circuit regarding this issue. In fact, the court found only two cases discussing

the rebuttable presumption and its results under § 9-626. The United States Bankruptcy

Court for the Eastern District of Pennsylvania, found that the creditor had rebutted the

presumption that the collateral had the same value as the debt, and the  deficiency was

determined as the difference between the sale price and the allowed claim.[19]  The Court

of Appeals of Iowa held that the secured creditor was not entitled to a deficiency because

the disposition of the collateral was not commercially reasonable. The lessor had not met

---

[18] Emphasis added.

[19]*In re Wilmington Hospitality*, LLC, 320 B.R. 73, (Bankr. E.D. Pa. 2005).

its burden showing that it complied with the notice provision, nor the amount of the proceeds from such a disposition would have been less than the amount of its secured obligation. In the case before the court, Commerce Bank did not present any testimony or evidence to rebut the presumption and earn the right to a deficiency judgment under state law. The creditor has the ultimate burden of persuasion as to the validity of the claim.[20] In applying the Wyoming UCC, this court finds that the creditor failed to carry its burden that the claim was valid.

In conclusion, Commerce Bank failed to provide sufficient notice of the disposition of the Aircraft; failed to provide testimony and evidence that its conduct for the disposition of the Aircraft was commercially reasonable manner and failed to rebut the presumption that would allow the court to order a partial or full amount of deficiency. Therefore Commerce Bank's Claim No. 16, as amended by Claim No. 43 is disallowed.

This opinion constitutes the Court's findings of fact and conclusions of law. Separate orders shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this _30_ day of January, 2012.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Brent King
    Stephen Winship

---

[20] *In re Geneva Steel Co.* 260 B.R. 517 (10th Cir. BAP 2001) and, *In re Harrison,* 987 F.2d 677 (10th Cir. 1993).