FILED

3:44 pm, 6/17/13

Tim J. Ellis
Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re ) | |
| ) | |
| MARMC TRANSPORTATION, INC., ) | Case No. 10-20653 |
| ) | Chapter 11 |
| Debtor. ) | |

## OPINION ON OBJECTION TO CLAIM FILED BY MARMON/KEYSTONE

On May 15, 2013, this matter came before the court for an evidentiary hearing on MarMc Transportation, Inc.'s ("MarMc") objection to the claim filed by Marmon/Keystone and the response filed by ITC Electrical Technologies ("ITC"). At the conclusion of the hearing, the court took the matter under advisement. Having reviewed the record, evidence and other testimony presented, the court is prepared to rule.

**Jurisdiction**

The court has jurisdiction over this proceeding under 28 U.S.C. §§ 1557 and 1334. This is a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(B).

**Facts**

MarMc filed its chapter 11 bankruptcy petition on June 3, 2010. MarMc listed Marmon/Keystone Corporation ("Marmon/Keystone") as an unsecured creditor on its Schedule F for the claim amount of $26,243.33.

A review of the claims register reflects that Marmon/Keystone filed its proof of claim on June 21, 2010 in the amount of $26,243.66. Subsequently, Marmon/Keystone

sold and transferred the claim to Southpaw Koufax, LLC ("Southpaw").

Mike Carruth ("Carruth"), owner of ITC, testified that Mark Richardson ("Richardson") president of MarMc, requested that ITC upgrade the electrical service at the restaurant, bar and motel located at Hiland, Wyoming. Mr. Carruth; Miles Childers, ("Childers") the on-site manager and MarMc employee; and Richardson attended the initial walk-through. Thereafter, ITC received its directions regarding the electrical work from Childers. The work performed also included installing heavier electrical service for "mancamp" connections.[1] The parties did not enter into a written contract. ITC did the requested work and sent the invoices to MarMc. During this time period, ITC believed it was performing these services for MarMC at the request of its president, Richardson.

After MarMc stopped paying the invoices that ITC submitted, ITC filed a complaint in the District Court for the Seventh Judicial District, State of Wyoming, County of Natrona on March 15, 2010 against Richardson, MarMc and other defendants. On June 3, 2010, a clerk's Entry of Default was entered. ITC then sold its claim. As a condition of that sale, ITC was required to indemnify its assignee if there was a subsequent problem with the claim. MarMc's objection to the claim constituted a problem. Carruth stated that upon realizing that ITC was going to have to address the claim objection issue on behalf of Southpaw, ITC re-purchased the claim on the Monday prior to the evidentiary hearing.

---

[1] Mr. Childers testified that "mancamps" are movable living quarters, built on skid, provided for workers in the oil field.

Page 2

Mr. Childers worked for MarMc for about two years at the Hiland location. His job included overseeing the remodeling inspections and supervising/performing the day-to-day operations of the restaurant, bar and hotel. Mr. Childers testified that: (1) Richardson scheduled the sub-contractors; (2) all bills for the remodeling, repairs and operations of the Hiland store, bar and motel were sent to MarMc; (3) the electrical work provided was to "revamp the electrical system" to provide sufficient electrical service for the mancamps located on the property and overhaul the electrical system throughout the restaurant, bar and motel. Mr. Childers testified that "people" from MarMc stayed in the mancamps and used the facilities. MarMc's employees, guests and Richardson, stayed and used the facilities at Hiland, including but not limited to, staying over night, fueling MarMc trucks and using the Hiland facilities for MarMc's promotional parties.

Cindy Richardson testified that MarMc did not own the facility in Hiland. It is owned by Richardson, individually. MarMc was an oil-field transportation and movers business. Cindy testified that Richardson operated MarMc until March or April, 2010 when she became involved after Richardson had basically stepped out of the picture. Cindy admitted that Richardson was president and operating MarMc in 2008 and 2009.

**Discussion**

A properly filed proof of claim constitutes prima facie evidence of the validity and

amount of the claim.[2] Such a claim is deemed allowed unless a party in interest objects.[3] The objecting party has the burden of going forwarded with evidence supporting the objection. Such evidence must be of a probative force equal to that of the allegations contained in the proof of claim. However, an objection raising only legal issues is sufficient. Once the objecting party has reached this threshold, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim.[4] The validity of a creditor's claim is determined under state law. The bankruptcy court is required to determine validity or invalidity of the contract by looking to the law of the state which the court found that the contract was made and primarily payable.[5]

Validity of the Claim

(1)   Oral contract.

The basic elements of a contract are offer, acceptance, and consideration. When these elements have been established, courts conclude that there has been a meeting of the minds and an enforceable contract exists.[6] In this case, Carruth and Childers testified that MarMc, through its president, Richardson, requested ITC perform the electrical

---

[2] Fed. R. Bankr. P. 3001(f).

[3] 11 U.S.C. § 502(a).

[4] *In re Geneva Steel Co.* 260 B.R. 517 (10th Cir. BAP 2001) *In re Harrison*, 987 F.2d 677 (10th Cir. 1993).

[5] *Grogen v. Gardner*, 498 U.S. 279 (1991).

[6] *Dietz v Dietz*, 999 P. 2d 642 (Wyo. 2000).

work at Hiland. ITC accepted the offer of the work and there was consideration paid for the services. The court finds that there was a meeting of the minds and an oral contract existed.

MarMc raised the issue that MarMc does not own the Hiland facility; a corporate resolution was not passed authorizing Richardson to use MarMc funds to pay for the electrical services provided and MarMc did not receive any benefit from the electrical services ITC performed. This court addressed the issue of Richardson, individually, incurring debts on behalf of MarMc in the Memorandum Opinion on Objection to Proofs of Claim of Fremont Aviation entered on Dec. 19, 2011. The court found that (1) Richardson's acts of incurring debt on behalf of MarMc were acts that could have been authorized by its boards of directors; (2) MarMc accepted and retained the benefits of the Hiland facility when its employees stayed overnight, fueled their trucks; and MarMc hosted promotional events from Hiland; (3) the bills for the remodeling and operations were sent to MarMc and paid from an account titled, "Richardson and Richardson" were assumed to include Mark Richardson and Cindy Richardson, as the parties were married at that time and the owners and officers of MarMc; and, (4) MarMc's management and board of directors did not question or repudiate the expenses. In conclusion, the court finds that the claim is valid.

<u>Amount of the Claim</u>

ITC provided copies of invoices that support the claim amount. The claim amount

was not contested by MarMc. The court's review of the invoices and proof of claim reflect that one payment was credited to the invoice balance corresponding to the claim amount of $26,243.66. ITC carried its burden by providing evidence of the validity of the amount.

In conclusion, ITC met its burden of providing testimony and evidence of the validity and amount of the claim. MarMc's objection shall be overruled and ITC's claim allowed.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this _17_ day of June, 2013.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
Stephen Winship
Blair Trautwein